**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **MAGISTRATE NO. 21-MJ-218 (ZMF)** |
| | : | |
| **WILLIAM CHRESTMAN,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**MOTION FOR EMERGENCY STAY AND**
**FOR REVIEW OF RELEASE ORDER**

On January 6, 2021, the defendant, a member of the Proud Boys, engaged with others in an armed insurrection aimed at defeating the Constitution and interrupting the peaceful transfer of presidential power. Armed with an axe handle and clad in camouflage, tactical gear, and a helmet marked with orange duct tape so that his co-conspirators could identify him, the defendant stormed the Capitol to hinder the Senate's certification of the Electoral College vote. Encouraging others to do the same, the defendant impeded law enforcement's efforts to protect the Capitol, and aided the armed, hours-long occupation of the U.S. Capitol by insurrectionists.

Upon returning home after the insurrection, comprehending his crimes and realizing that the insurrection was the subject of a criminal investigation, the defendant instructed one of his co-conspirators to hold his firearms. He attempted further to scrub any trace of his presence at the Capitol by disposing of the clothing and gear he wore during the insurrection. The defendant poses not just a clear and present danger to the community, but is also a risk of both flight and obstruction of justice. He should therefore be detained pending trial. The government now appeals a February 19, 2021 release order by a Magistrate Judge in the District of Kansas and moves the court to issue an emergency stay of release until that appeal is resolved.

I.     **BACKGROUND**

    A.     **Procedural Posture**

On February 11, 2021, the defendant was arrested in his home state of Kansas on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Zia M. Faruqui in connection with a Criminal Complaint charging the defendant with Conspiracy (18 U.S.C. § 371); Civil Disorder (18 U.S.C. § 231(a)(3)); Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)); Threatening to Assault a Federal Law Enforcement Officer (18 U.S.C. § 115(a)(1)(B)); Knowingly Entering or Remaining an any Restricted Building or Grounds without Lawful Authority and with a Dangerous Weapon (18 U.S.C. §§ 1752(a)(1) and (2); 18 U.S.C. § 1752(b)(1)(A)); and Disorderly Conduct on Capitol Grounds (40 U.S.C. §§ 5104(e)(2)(D) and (G)).[1]

The defendant was held at his initial appearance on February 12, 2021 pursuant to 18 U.S.C. § 3142(f)(1)(E) on a three-day hold pending his detention hearing. At the detention hearing on February 17, 2021, the United States renewed its motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E), 3142(f)(2)(A), and 3142(f)(2)(B). The presiding Magistrate Judge ultimately denied the government's detention motion and issued an order releasing Defendant with certain conditions on Friday, February 19, 2021. Still, the Magistrate Judge called this case a "very close call." Following the order of release, the United States immediately moved to stay the defendant's release pending its appeal. The Magistrate Judge has not yet ruled on this motion. The defendant remains detained until likely Monday, February 22 so that he can be affixed with a GPS

---

[1] The defendant was charged alongside four other co-conspirators in 21-mj-218: Christopher Kuehne, Louis Enrique Colon, Felicia Konold, and Cory Konold.

monitoring device and meet other conditions.

**B.     Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there. Among those persons was Defendant William Chrestman, who traveled from his home in the State of Kansas to participate in the riot at the United States Capitol on January 6, 2021.

Proud Boys is a nationalist organization with multiple U.S. chapters and potential activity in other Western countries. The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where certain of its members sometimes engage in acts of violence against individuals whom they perceive as threats to their values. The group has an initiation process for new members, which includes the taking of an "oath." Proud Boys members often wear the colors yellow and black, as well as other apparel adorned with Proud Boys-related logos and emblems.

Beginning as early as December 2020, public communications from Proud Boys organizers encouraged members of the Proud Boys to attend the January 6, 2021, demonstration in Washington, D.C. Such communications included messages sent by the self-described chairman of the Proud Boys, Enrique Tarrio. For example, on or about December 29, 2020, Tarrio posted a message on the social media site Parler about the demonstration planned for January 6, 2021. Among other things, Tarrio announced that the Proud Boys would "turn out in record numbers on Jan 6th but this time with a twist… We will not be wearing our traditional Black and Yellow. We will be incognito and we will be spread across downtown DC in smaller teams. And who knows….we might dress in all BLACK for the occasion." The statement about dressing in "all BLACK" is a reference to dressing like the group known as "Antifa," who the Proud Boys have identified as an enemy of their movement and who are frequently depicted in the media clad in black clothing. The post was accessible to any users or guests of Parler's site, and it was reported in the media.

On or around the same day, Joseph Biggs, a self-described organizer of the Proud Boys, posted a similar message on Parler in which he stated, among other things, "We will not be attending DC in colors. We will be blending in as one of you. You won't see us. You'll even think we are you . . .We are going to smell like you, move like you, and look like you. The only thing we'll do that's us is think like us! Jan 6th is gonna be epic." I understand that, in referring to "you" Biggs was directing these statements at "Antifa," who are frequently depicted in the media as wearing black clothing at rallies and counter-protests.

On January 6, 2021, a large group of Proud Boys were captured on publicly-available video marching in a group on Constitution Avenue, Northwest, in the area around First Street, Northwest. The group march was led by, among others, Proud Boys organizers Joseph Biggs and Ethan

Nordean, who have both been charged by complaint.[2] The group was engaged in various chants and response calls, including "F*** Antifa!" and "Whose streets? Our streets!" The defendant and his co-conspirators were observed within this group.

A review of open source media depicted the defendant interacting with several members of the Proud Boys near the Capitol before it was breached. The image below depicts the defendant, wearing black and camouflage clothing, a black baseball cap, and tactical vest (left) communicating with a Proud Boy leader, Ethan Nordean (right).



The same group of Proud Boys were later captured on publicly-available video moving toward the pedestrian entrance to the Capitol grounds on First Street, Northwest. The group continued to be led by Proud Boy organizers Joseph Biggs and Ethan Nordean. As depicted in the

---

[2] On January 19, 2021, Joseph Biggs was charged by criminal complaint for violations of 18 U.S.C. §§ 1512(c), 1752(a), and 40 U.S.C. §§ 5104(e)(2)(D) and (F). *United States v. Joseph Biggs,* 21-mj-126. On February 2, 2021, Ethan Nordean was charged by criminal complaint for violations of 18 U.S.C. §§ 1361, 2 and 18 U.S.C. § 1512(c)(2), among other charges, in connection with his actions at the U.S. Capitol on January 6, 2021. *United States v. Ethan Nordean,* 21-mj-195.

images below, marching among this group was the defendant and the other members of the charged

conspiracy in 21-mj-218. Walking within feet of the defendant are other identified Proud Boys,

such as William Pepe, who has been indicted for his conduct on January 6, 2021.[3]



*The Defendant and His Co-Conspirators' Conduct at the Capitol on January 6, 2021*

Shortly before 1:00 p.m., a large crowd, including a large group of Proud Boys, gathered

near the pedestrian entrance to the Capitol grounds on First Street. The entrance was secured by a

small number of U.S. Capitol Police, who stood behind a waist-high metal barrier. Shortly

thereafter, two men advanced toward the waist-high metal gate. The crowd followed. The

defendant and some of his co-conspirators moved to the front of the crowd during the initial

confrontation with law enforcement. The defendant appeared to have a black helmet with a piece

of orange tape hanging from his backpack (circled in yellow below). This orange tape is similar in

kind and character to the orange tape affixed to the headwear of the defendant's co-conspirators.

---

[3] William Pepe was charged by indictment on January 29, 2021, in a Conspiracy with another
identified Proud Boy, Dominic Pezzola  in 21-cr-52, with violations of 18 U.S.C. §§ 231, 1512(c),
among other charges, in connection with his actions at and inside the U.S. Capitol on or about
January 6, 2021.

In fact, one of the defendant's co-conspirators carried two rolls of the same type of orange tape on his backpack while advancing throughout the Capitol and its grounds.

 

Within minutes, the crowd overwhelmed the U.S. Capitol Police officers seen at the top of the steps in the image above. The metal barricades were toppled, and the crowd advanced toward the Capitol. Moments later, the defendant and some of his co-conspirators had moved past the barrier and placed themselves at or near the front of the crowd at the next police barrier.

As Capitol Police began to form another line closer to the Capitol, the defendant and some of his co-conspirators were among those at the front of the crowd. The defendant then stood directly in front of Capitol Police officers who were attempting to guard the Capitol. The defendant yelled at the Capitol Police officers, "You shoot and I'll take your fucking ass out!" At a different point, Capitol Police officers attempted to arrest one person from the crowd, and the defendant encouraged other members of the crowd to stop the Capitol Police from arresting him. Among other things, the defendant said to other members of the crowd, "Don't let them take him!" The

defendant carried a wooden club or axe handle that was initially disguised as a flag. As shown below, the flag can be seen wrapped around the wooden club or axe handle



The next police line was soon overwhelmed and outflanked by crowds of people as they crowd advanced to the front plaza of the U.S. Capitol. The defendant and some of his co-conspirators again moved to the front of the crowd and stood directly in front of law enforcement officers who were attempting to guard the Capitol. The defendant put on the black helmet with orange tape, and he can be seen holding what appears to be the same wooden club or axe handle discussed above. In the image below, the wooden club or axe handle has been stripped of the flag.



Shortly thereafter, the defendant removed the black helmet and donned what appears to be a respirator. The helmet with orange tape that had been worn by the defendant was then worn briefly by one of his co-conspirators.



Video footage taken during the event also captured the defendant addressing the crowd of people who had unlawfully assembled on the Capitol grounds. At one point, the defendant turned to face the crowd and shouted: "Whose house is this?" The crowd responded, "Our house!" The defendant shouted, "Do you want your house back?" The crowd responded, "Yes!" The defendant then shouted back, "Take it!"

At another point while outside the Capitol, and as seen in the image below, the defendant and some of his co-conspirators and others used their hands and bodies in an effort to disrupt or dismantle the metal barriers that officers were using to control the crowd.



*The Defendant and His Co-Conspirators' Conduct Inside the Capitol on January 6, 2021*

The defendant and his co-conspirators subsequently entered the U.S. Capitol and appeared together at various locations inside the building. For example, footage obtained from surveillance cameras inside the Capitol, along with open source video, depicts efforts by law enforcement officers to lower metal barriers in the tunnels underneath the Capitol. These metal barriers are designed to seal off areas of the Capitol and were deployed in an effort to control the crowd. Capitol Police officers were positioned on the other side of the metal barriers, which were being lowered to prevent the crowd from advancing. The defendant and all but one of his co-conspirators took deliberate steps to prevent the barriers from closing. The defendant and his co-conspirators' actions were intended to and did serve to prevent law enforcement from securing areas of the Capitol against unlawful entrants.

One of the defendant's co-conspirators can be seen intentionally obstructing the operations of the metal barriers by attempting to stop them from closing by placing her arm in the path of the barriers. Law enforcement officers can be seen standing on the other side of the barrier.





\

At around the same time and in the same general location in the Capitol, the defendant took a similar action to obstruct the metal barriers with a wooden club or axe handle.



As shown below, the defendant and his co-conspirators can be seen standing near one another, and the surveillance video appears to show them gesturing and calling out to one another as law enforcement officers attempted to lower the barriers.[4]

---

[4] Proud Boys Nicholas Ochs and Nicholas DeCarlo can be seen in the background recording the unlawful conduct with their phones and other devices. As this Court is particularly aware, Ochs and DeCarlo were indicted on February 3, 2021 in 21-cr-73 (BAH), for a Conspiracy to commit violations of 18 U.S.C. § 1512(c), among other charges, in connection with their actions at and inside the U.S. Capitol on or about January 6, 2021.





One of the defendant's co-conspirators grabbed what appears to be a podium and placed the podium strategically in the track of one of the barriers, which action would likely prevent the barrier from closing. Shortly after that co-conspirator obstructed the path of one door with the podium, another co-conspirator grabbed a chair and placed it in the path of a separate barrier.

 

In a different surveillance video from a different part of the Capitol, the defendant and his co-conspirators can again be seen in close proximity to one another while interacting with several other persons who unlawfully entered the Capitol.





*Search of the Defendant's Residence*

On February 11, 2021, federal law enforcement officers executed a search warrant at the defendant's home. Prior to the execution of the search warrant, the defendant had been publicly identified in local press as having participated in the riot at the Capitol on January 6, 2021. Surveillance of the defendant's home revealed that the defendant may have been engaged in efforts to thwart the law enforcement investigation. For example, law enforcement agents believe the defendant may have removed the house numbers from his residence.

Among the items recovered from the search was his cellular telephone. Of note, that phone was found in the dresser drawer in the bedroom of the defendant's young child. Agents did not recover any camouflage clothing or tactical gear similar to what the defendant's wore on January 6, 2021. Additionally, none of the defendant's firearms were seen by the agents during the search of the residence. The defendant has displayed a particular rifle on social media posts several times

and the posts give the impression that the firearm has significant meaning to the defendant. It is noteworthy that rifle was absent from the defendant's home. While interviewing one of the defendant's co-conspirators, investigating agents learned the defendant had asked that co-conspirator to keep the defendant's firearms after they returned back to Kansas following the events of January 6, 2021.

### C.     Order for Release

After a detention hearing in the District of Kansas, the presiding Magistrate Judge issued an Order of Release for Defendant on February 19, 2021 with certain conditions, including GPS monitoring and home confinement. In the Order, the Magistrate Judge explained that this case was a "very close call" and stated that the evidence in this case presents an "overwhelming case on the merits against the defendant." Still, the Magistrate Judge found ultimately that there were conditions of release that could be fashioned, looking specifically to the defendant's lack of criminal record and ties to his community. The Magistrate Judge shared the government's concern about the defendant's risk of flight and risk of obstruction, but in the end determined that the government did not meet its burden by presenting clear and convincing evidence to support those concerns.

Following the order of release, the United States immediately moved to stay the defendant's release pending its appeal. The Magistrate Judge has not yet ruled on this motion for stay. The defendant remains detained until likely Monday, February 22, 2021 until he can be affixed with a GPS monitor.

## II.     **ARGUMENT**

### A.  This Court Has the Authority to Stay and Review the Release Order

Title 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order –** If a person is ordered released by a magistrate, …
>
> > (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
> The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[5]

---

[5] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving*

**B.  The Bail Reform Act Factors All Weigh in Favor of Detention**

The United States seeks detention on a number of bases. First, the United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E), because not only did the defendant violently enter the U.S. Capitol without lawful authority, but he also went in carrying a dangerous weapon, that is, an axe handle, that he concealed initially with a flag. The United States also seeks detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and 3142(f)(2)(B) because the defendant poses a serious risk of flight and because there is a serious risk that he will obstruct or attempt to obstruct justice, or will threaten, injure, or intimidate a prospective witness (or attempt to do so). Consequently, the government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

As the Court is aware, there are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.  <u>The Nature and Circumstances of the Offenses Weigh in Favor of Detention</u>**

The nature and circumstances of the charged offenses weigh heavily in favor of detention. The defendant knowingly and willfully participated in a riot that was designed to prevent the

---

*judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

<u>See</u> S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

United States Congress from certifying the results of the 2020 Presidential election. Not only did the defendant participate in the riot, at various times, he assumed a de facto leadership role by shouting to or directing his co-conspirators and others in the crowd, including by calling out: "Whose house is this?" and then encouraging the crowd to "Take it!" He also led his co-conspirators throughout the Capitol building and its grounds and served as the primary coordinator of their efforts to disrupt the efforts of law enforcement.

Moreover, the defendant directly engaged with and interfered with law enforcement's efforts.  Specifically, the defendant yelled at the Capitol Police officers, "You shoot and I'll take your fucking ass out!" And when Capitol Police officers attempted to arrest one person from the crowd, the defendant encouraged other members of the crowd to stop the Capitol Police from arresting him.

Words alone may never communicate the true nature of the crimes that were carried out on January 6. It is an event that cannot be measured in the number dead, injured, or wounded, but rather in the destabilizing effect that it has had on this country. This destabilizing effect is precisely what the defendant envisioned when he lead others to participate with other Proud Boys in the riot at the Capitol building.

**B.**     **The Weight of the Evidence Weighs in Favor of Detention**

The weight of the evidence against Defendant weighs strongly in favor of detention. Dozens of videos and photographs exist to prove the defendant's participation in the Capitol riot on January 6, 2021. As the Magistrate Judge in Kanas stated, the amount of evidence against the defendant is overwhelming, to the point where "ultimate conviction is highly probable."

**C.**     **The Defendant's History and Characteristics Weigh in Favor of Detention**

Though the defendant's criminal record is limited with a firearms arrest in the mid-1990s,

his character weighs in favor of detention.  The defendant served as the de facto leader of this particular group of Proud Boys from the Kansas City area who violently stormed the Capitol on January 6.  His violent actions and words on that day, especially directed toward U.S. Capitol Police Officers underscore the defendant's contempt for the peaceful, orderly function of government.  This shows that, if the defendant were released, it is unlikely that he would abandon this ideology that led he and others to "take" the Capitol, as he directed them. Just more than one month has passed since this disturbing incident, and still the Capitol remains on high alert. The Capitol and other seats of government are made less safe with the release of leaders of the violence on January 6, like the defendant.

**D.     The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention**

*The Defendant Poses a Substantial Risk of Danger to the Community*

The defendant poses a substantial risk of danger to the community if he is released. His actions on January 6, 2021, demonstrated utter disregard for basic safety of others, including law enforcement officers, and a willingness to flout authority in support of mayhem. The defendant encouraged others to violate the law and took active measures to make it easier for others to violate the law by disrupting barriers and other conduct to obstruct U.S. Capitol Police. Further, the defendant readily recruited two individuals from Arizona to join members of the Kansas City Proud Boys, who then participated in the crime spree on U.S. Capitol grounds.

There is no reason to believe that the defendant, his co-conspirators, or any of those Proud Boy associates who engaged in unlawful activities on January 6, 2021, are any less interested in fomenting rebellion than they were on January 6, 2021.  If nothing else, the events of January 6, 2021, have exposed the size and determination of certain groups in the United States, and their willingness to place themselves and others in danger to further their ideology.  Releasing the

defendant to rejoin their fold and plan their next attack poses a potentially catastrophic risk of danger to the community.

*The Defendant Poses a Serious Risk of Flight and Obstruct Justice*

Defendant Chrestman also poses a serious risk of flight.  While he may have long-term ties to the Kansas City area, the removal of firearms, the disposal or removal of camouflage clothing, the disposal or removal of tactical gear, the disposal or removal of the respirator, the disposal or removal of the wood club or axe handle, and the secretion of his cellular phone in his young child's dresser drawer all point to calculated efforts to distance himself from the crimes committed on January 6, 2021.  Those actions suggest responses to guilty acts, which leads to the conclusion that the defendant is not amenable to conditions that could be imposed by this Court to ensure his appearance at future court hearings. Further, because others in his conspiracy have spoken with law enforcement about the defendant's actions and may wish to continue providing information to law enforcement, the orderly investigation of the case could be jeopardized by the defendant's release. Given the defendant's conduct during and after this case, the defendant poses a risk to intimidate both known and unknown co-conspirators.

## CONCLUSION

This Court has the authority to stay the Magistrate Judge from the District of Kansas's order to release Defendant pending trial in this case. Moreover, this Court has the authority to overrule that decision and order that the defendant be detained and transferred to the District of Columbia pending trial. This case warrants such an exercise of the Court's authority. This case involves a presumption of detention, and all four of the Bail Reform Act factors weigh heavily in favor of detention in this case.  There is no condition, or combination of conditions, that will ensure the safety of the community if the defendant is released.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
NY Bar No. 4444188

By:    /s/Christopher A. Berridge_____
Christopher A. Berridge
Assistant United States Attorney
GA Bar No. 829103
555 4th Street, N.W.
Washington, DC 20530
Desk: (202) 252-6685
Mobile: (202) 740-1738
Christopher.Berridge@usdoj.gov